UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JAN KONOPCA, | : |
| Plaintiff, | : Civil Action No. 15-6044 (FLW)(DEA) |
| v. | : **MEMORANDUM OPINION** |
|  | : **AND ORDER** |
| COMCAST CORPORATION, | : |
| Defendants. | : |

This matter comes before the Court on a motion [ECF No. 9] by Defendant Comcast Corporation ("Defendant" or "Comcast") to stay this case. Defendant contends that that two potentially dispositive issues are the subject of a ruling by the Federal Communications Commission ("FCC") that is now under appellate review, and it calls upon the Court to stay this matter pursuant to the primary jurisdiction doctrine and/or the Court's inherent authority to control its docket[1] pending disposition of the appeal. Plaintiff has opposed the motion. For the reasons below, the Court denies the motion.

## I. Background

Plaintiff Jan Konopca ("Plaintiff") alleges in his Amended Complaint that Defendant violated Section 227(b)(1)(A)(iii) of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227 *et seq.*, by making calls to his cell phone using an automated telephone dialing system and prerecorded messages. *See* Am. Compl. ¶¶ 6, 12-17. Under the TCPA, it is "unlawful … to make any call (other than a call made for emergency purposes or made with the

---

[1] After Defendant filed its motion, Plaintiff amended his Complaint to drop class claims originally asserted. This mooted an additional argument by Defendant that case should be stayed in light of the first-filed rule based upon the earlier filing of two other putative class actions, *Gusman v. Comcast Corp*, No. 13-1049 (S.D. Cal.) and *Jones v. Comcast Corp.*, No. 14-1735 (E.D. Pa.).

prior express consent of the *called party*) using any *automatic telephone dialing system* or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis supplied).  Plaintiff contends that Defendant called Plaintiff's cell phone numerous times over the past four years using an automated telephone dialing system and prerecorded messages that were not intended for him but, rather, for a third party.  It is alleged that the calls and prerecorded messages related to a Comcast account that did not belong to Plaintiff, who never had a business relationship with Comcast.  Consequently, two potentially dispositive issues in this case appear to be whether Comcast used an "automatic telephone dialing system" and whether it had the consent of the "called party."

On July 10, 2015, the FCC issued a 138-page Omnibus Declaratory Ruling and Order that addressed 21 petitions seeking clarification of a large range of issues arising under the TCPA, including (1) what equipment qualifies as an "automatic telephone dialing system" and (2) whether the term "called party" refers to intended or unintended recipients of calls. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961.  As to automatic telephone dialing systems, or autodialers, the TCPA defines "automatic telephone dialing system" as "equipment which has the capacity--(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).  The FCC concluded that "that Congress intended a broad definition of autodialer", *id.* ¶ 15, and the FCC clarified that "the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities." *Id.* ¶ 16.  Potential functionalities encompass "hardware, [that] when paired with certain software, has the capacity to store or produce numbers and dial those numbers." *Id.* at ¶ 24.  The FCC specified that, "even when dialing a fixed set of numbers, equipment may

nevertheless meet the autodialer definition." *Id.* at ¶ 12.  In sum, "the TCPA's unqualified use of the term 'capacity' was intended to prevent circumvention of the restriction on making autodialed calls to wireless phones." *Id.* at ¶ 14.

The FCC additionally found that the statutory term "called party" refers to the "subscriber, *i.e.*, the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan", *id.* ¶ 73, and clarified that "the TCPA requires the consent not of the intended recipient of a call, but of the current subscriber (or non-subscriber customary user of the phone)", *id.* ¶ 72.

The FCC, however, was divided on many of the issues before it.  For example, with respect to the terms at issue in the instant case, the Commissioners split 3-2, with Commissioners Ajit Pai and Michael O'Rielly dissenting.  As to the meaning of "called party," Commissioner Pai felt that the majority's reading would inject a strict liability standard into the TCPA.  He asserted that the FCC should interpret the words of the statute to make clear that "prior express consent of the *called party*" means the prior express consent of *the party the caller expects to reach*.  *Id.*, Dissenting Statement of Commissioner Pai at 10 (emphasis supplied).  Commissioner O'Rielly similarly believed that the majority had rejected a "commonsense approach [that] would have allowed a company to reasonably rely on consent obtained for a particular number." *Id.*, Dissenting Statement of Commissioner O'Rielly.

With regard to the meaning of "automatic telephone dialing system," Commissioner Pai took issue with the majority's interpretation, stating that it "transforms the TCPA from a statutory rifle-shot targeting specific companies that market their services through automated random or sequential dialing into an unpredictable shotgun blast covering virtually all communications devices." *Id.*, Dissenting Statement of Commissioner Pai.  Commissioner

O'Rielly similarly asserted that the majority's interpretation "impermissibly expands the statutory definition … far beyond what the TCPA contemplated." *Id.*, Dissenting Statement of Commissioner O'Rielly at 4.

Following the FCC's decision, a number of organizations filed petitions for review, and at least eight of those petitions challenge the FCC's interpretation of the terms "called party" and/or "automatic telephone dialing system." *See* ECF No. 9-2 at Exhibits B through I.  On July 24, 2015, the Judicial Panel on Multidistrict Litigation centralized the petitions for review in the D.C. Circuit.  *See ACA Int'l v. Fed. Commc'ns Comm'n*, No. 15-1211 (D.C. Cir.).  A review of the docket shows that briefing was completed February 24, 2016, but it does not appear a date for oral argument has been set.

## II.  Legal Standards

### A.  Primary Jurisdiction

The doctrine of primary jurisdiction applies where a claim is originally cognizable in the courts but "enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956). "[I]n such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *Id*.  Courts have invoked the primary jurisdiction doctrine "to advance regulatory uniformity," "to answer a question … within the agency's discretion," and "to benefit from technical or policy considerations within the agency's … expertise." *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 466 (6th Cir. 2010) (invoking primary jurisdiction doctrine in TCPA case) (internal quotation marks omitted); *Richmond Bros. Records, Inc. v. U.S. Spring Communications, Co.*, 953 F.2d 1431, 1435 (3d. Cir. 1991) (primary jurisdiction particularly appropriate where "the

issue involves technical questions of fact uniquely within the expertise and experience of the agency").

Importantly, "[n]o fixed formula exists for applying the doctrine…." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956). However, the Third Circuit has articulated four factors useful in determining whether a court should abstain on the basis of primary jurisdiction. Those factors are:

> (1) Whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;
> (2) Whether the question at issue is particularly within the agency's discretion;
> (3) Whether there exists a substantial danger of inconsistent rulings; and
> (4) Whether a prior application to the agency has been made.

*Raritan Baykeeper v. NL Indus., Inc.*, 660 F.3d 686, 691 (3d Cir. 2011).  Where the doctrine of primary jurisdiction does apply, it "requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling." *Reiter v. Cooper*, 507 U.S. 258, 268 (1993).

B.  <u>Inherent Power</u>

It is well-established that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254-55.  In considering whether a stay is appropriate, the Court examines whether the proposed stay would prejudice the non-moving party, whether the proponent of the stay would suffer a hardship or inequity if forced to proceed and whether granting the stay would further the interest of judicial economy.  *See id.*; *Ford Motor Credit Co. v. Chiorazzo*, 529 F.Supp.2d 535, 542 (D.N.J. 2008).  District courts have broad powers to stay proceedings. *Bechtel v. Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d

Cir. 1976). Also, where a stay is sought pending resolution of purportedly related litigation, as here, courts consider whether resolution of the related litigation would substantially impact or otherwise render moot the present action." *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 446 (D.N.J. 2014). In deciding a motion to stay, the Court must be mindful of the fact that "[t]he stay of a civil proceeding is an extraordinary remedy." *S. Freedman and Co. Inc. v. Raab*, Civ. No. 06-3723, 2008 WL 4534069, *2 (D.N.J. Oct. 6, 2008). The party seeking a stay of civil litigation bears the burden to show that the stay would be appropriate. *Landis*, 299 U.S. at 255.

### III. Analysis

As noted above, Defendant asks the Court to stay these proceedings in light of a pending appeal that concerns potentially dispositive threshold legal issues, and argues that the Court may stay the action under the primary jurisdiction doctrine or under its own inherent authority to manage its docket. Defendant argues that temporarily staying this action would "preserve resources, prevent conflicts, promote comity and prejudice no one." ECF No. 9-1 at 1.

Plaintiff opposes staying this action. First, Plaintiff contends that the term "called party" is non-technical and capable of interpretation by the Court, and Plaintiff points to a number of decisions where courts have done just that. Second, Plaintiff argues that the term "automatic dialing system" will have "little impact" on this matter, because at issue in this litigation are not only autodialed calls, but also prerecorded messages, which are similarly prohibited by the TCPA. As such, issues in this litigation fall outside the scope of the pending D.C. Circuit appeal. Third, Plaintiff asserts that Defendant has not demonstrated any hardship or inequity that would result from denial of a stay. Fourth, Plaintiff argues that he would be unfairly prejudiced by a stay, because it will prolong judicial resolution of this action.

As the FCC has already ruled on the issues before it, the Court finds that the relevant legal standard applicable to Plaintiff's motion is that of the Court's inherent power to stay the case rather than primary jurisdiction. Considering the relevant factors, the Court finds that Defendant has not met its burden of showing the circumstances justify a stay of this case.

With respect to the first factor, the Court considers whether a stay would unduly prejudice the Plaintiff. Here, if a stay is granted, there is the potential for a lengthy delay, as it is uncertain when the D.C. Circuit will issue a ruling. "Because delay results inherently from the issuance of a stay, courts have found that mere delay does not, without more, necessitate a finding of undue prejudice and clear tactical disadvantage." *Nussbaum v. Diversified Consultants, Inc.*, No. 15-600, 2015 WL 5707147, at *2 (D.N.J. Sept. 28, 2015) (quotations omitted). However, the delay here could be substantial. As noted by one court in addressing a motion similar to the instant motion,

> the D.C. Circuit is unlikely to be the final step in the litigation over the FCC's 2015 Omnibus Order. Whichever party is unsuccessful in that court is almost certain to appeal to the Supreme Court. Thus, even the most optimistic estimate of the time required for a decision from the D.C. Circuit significantly understates both the delay a stay might engender and the concomitant prejudice to Plaintiff.

*Lathrop v. Uber Techs., Inc.*, No. 14-CV-05678-JST, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016); *see also Elikman v. Sirius XM Radio, Inc.*, No. 15-2093, 2015 U.S. Dist. LEXIS 171769 at *6-7 (N.D. Ill. December 21, 2015) ("Staying the case pending the D.C. Circuit's review would also subject [Plaintiff] to the inequity of indefinite delay, as it is unknown when the D.C. Circuit will rule."). Consequently, the Court finds that, on balance, this factor weighs slightly against staying this case.

Second, the Court considers whether Defendant would suffer a hardship or inequity if forced to proceed. Here, the only purported "hardship" identified by Defendant is the possibility

that the parties may engage to some extent in unnecessary discovery and/or motion practice. The Court does not find this sufficient to constitute the requisite hardship or inequity and, therefore, finds that this second factor weighs against staying this case.

Third, the Court considers whether the stay would further the interest of judicial economy, and whether resolution of the appeal to the D.C. Circuit would substantially impact the present litigation. Defendant argues that two potentially dispositive threshold issues in this case are whether Comcast used an "automatic telephone dialing system" and had the consent of the "called party." However, other than pointing baldly to the allegations in the Complaint, Defendant makes no showing that that there are specific disputes in this case that turn on the FCC's ruling. For example, there is no assertion that technology used to place the calls at issue would qualify as an "automatic telephone dialing system" under one interpretation of the term but not under another. Absent such a showing, this Court cannot conclude that a stay of this case would further the interests of judicial economy. Moreover, as noted earlier, there are issues in this litigation that fall outside the scope of the FCC's ruling and upon which the pending appeal to the D.C. Circuit will have absolutely no impact. This factor, therefore, weighs against entering a stay.

In sum, while the Court recognizes that this case is in its earliest stages, Defendant simply has not shown the circumstances of this case justify granting the relief sought. Accordingly,

**IT IS** on this 26th day of April 2016,

**ORDERED** that the motion to stay this case [ECF No. 9] is hereby DENIED.

/s/ Douglas E. Arpert  
DOUGLAS E. ARPERT  
United States Magistrate Judge